UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MYLES HERNANDEZ,

                              Plaintiff,

            -against-                                    1:12-CV-1614 (LEK/RFT)

CITY OF ALBANY, *et al.*,

                              Defendants.

_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

        Plaintiff Myles Hernandez ("Plaintiff") brings this action against Defendants City of Albany;

City of Albany Police Department; Officer R. Lawyer ("Lawyer"); and Officers John Doe #1-10

(collectively, "Defendants") pursuant to 42 U.S.C. §§ 1981, 1983, and New York law.  Dkt. No. 1

("Complaint").  Defendants have moved for summary judgment on all claims.  Dkt. Nos. 37

("Motion"); 37-2 ("Defendants' Memorandum").  For the following reasons, the Motion is granted

in part and denied in part.

## II.   BACKGROUND

### A.  The Incident

        On October 29, 2011, Lawyer was dispatched to investigate a noise complaint at 85

Partridge Street in the City of Albany.  Dkt. Nos. 37-1 ("Statement of Material Facts") ¶ 1; 45

("Statement of Material Facts Response") ¶ 1.  Lawyer claims that he could hear loud music coming

from a nearby residence at 94 Partridge Street.  SMF ¶¶ 2-6, 9.[1]  Lawyer and a non-party officer

---

[1] Plaintiff concedes that the area is known for college parties, but asserts that the party at 94 Partridge Street was not raucous, and there was no band, disc jockey, or other loud music being played.  SMF Resp. ¶¶ 3-5, 9.

entered the premises to investigate. SMF ¶¶ 5-6; SMF Resp. ¶¶ 5-6.

Lawyer inquired as to who owned or occupied the apartment. SMF ¶ 11; SMF Resp. ¶ 11. It is undisputed that Plaintiff then approached Lawyer. SMF ¶ 12; SMF Resp. ¶ 12. However, Defendants claim that Plaintiff "confronted" Lawyer, whereas Plaintiff argues that he merely engaged Lawyer in a conversation and was calm and compliant at all times. SMF ¶ 12; SMF Resp. ¶ 12.

Defendants further assert that Plaintiff then lied to Lawyer by stating that he did not know who occupied the apartment and that it was vacant, even though Plaintiff did in fact know the true tenant's identity. SMF ¶¶ 15-17. Plaintiff denies this assertion, claiming that he told Lawyer that he indeed knew the owner but believed that he had already left because all of the attendees were in the process of exiting the party. SMF Resp. ¶¶ 15-17.

Plaintiff then offered his identification to Lawyer to prove that he was over twenty-one years of age. SMF ¶ 19; SMF Resp. ¶ 19. It is undisputed that Plaintiff was the only partygoer to approach and converse with Lawyer inside the premises. SMF ¶ 31; SMF Resp. ¶ 31.

Plaintiff then asked Lawyer for permission to leave the premises. SMF ¶ 20; SMF Resp. ¶ 20. The parties offer contrasting views of what occurred next. Defendants claim that Lawyer instructed Plaintiff to remain in the apartment, but Plaintiff refused that direction and attempted to walk past Lawyer, brushing up against Lawyer in the process. SMF ¶¶ 21-22. Defendants assert that Lawyer then grabbed Plaintiff's arm, and "[i]n response, the Plaintiff tightened up his arm and raised his hands in a defensive, fighting stance." Id. ¶¶ 23-24. Moreover, Lawyer was the only officer in the room at the time, surrounded by twenty five to thirty partygoers, and Plaintiff stood six feet two inches tall and weighed approximately 200 pounds. Id. ¶¶ 7, 13, 26. Fearing for his safety,

Lawyer claims that he struck Plaintiff with a closed fist on the left side of his head "in an effort to create distance between him and the Plaintiff." Id. ¶¶ 27-28. Lawyer then struck Plaintiff two more times on the left side of the head with a closed fist "in an effort to control the situation," and radioed for backup. Id. ¶ 30.

Plaintiff denies that he attempted to walk past Lawyer or that he made any contact with him; rather, Plaintiff asserts that he simply requested to leave, and, in response, Lawyer called him a "wiseguy" or "smartass" and immediately punched him in the face. SMF Resp. ¶¶ 21-22. Plaintiff claims that he would not have attempted to leave because Lawyer was still in possession of Plaintiff's identification. Id. ¶ 23. Furthermore, Plaintiff states that he never raised his hands, clenched his fist, or displayed a fighting or aggressive stance. Id. ¶ 24. Indeed, Plaintiff states that he was immediately "blindsided" by Lawyer's punches and Plaintiff was still holding his wallet in his left hand at the time. Id. ¶¶ 24, 27. Plaintiff also disputes that Lawyer was alone, asserting that at least two other officers were present in the room at the time. Id. ¶ 26. Moreover, Plaintiff states that earlier in the evening there may have been twenty five to thirty people at the party; however, at the time Lawyer entered, there were only eight to ten partygoers remaining. Id. ¶ 7. Finally, Plaintiff alleges that after Lawyer's punches knocked him to the ground, several officers pinned him down, aggressively picked him up, slammed him into the wall face first, and handcuffed him. Id. ¶ 28.

Following the altercation, Plaintiff was taken into custody, arrested, and charged with obstruction of governmental administration and resisting arrest. See id. ¶ 35; Dkt. No. 37-26 ("Exhibit T"). The Hon. Rachel L. Kretser, Albany City Court Judge, dismissed the criminal complaint against Plaintiff as facially insufficient. Ex. T. at 4. Specifically, Judge Kretser found

3

that the complaint failed to allege that Plaintiff knew that Lawyer was engaged in an investigation or that Plaintiff refused to step aside or otherwise impede or interfere with the officers' attempt to investigate. Id. at 3-4. Thus, the complaint "fail[ed] to provide reasonable cause that [Plaintiff] committed the crime of obstruction." Id. at 4. Judge Kretser also concluded that because the obstruction charge must be dismissed, the "resisting arrest charge must likewise be dismissed." Id.

### B. Racial Considerations

Plaintiff is of Hispanic and African-American descent. SMF ¶ 33; SMF Resp. ¶ 33. Plaintiff was the only African-American person at the party, but an Asian male and a Hispanic male were also in attendance. SMF ¶ 34; SMF Resp. ¶ 34. A Caucasian partygoer, Jesse Johnson ("Johnson"), was taken into custody and handcuffed outside of 94 Partridge Street, but was later released at the scene and not arrested. SMF ¶¶ 35-37; SMF Resp. ¶¶ 35-37. Johnson did not interact with any police officers inside the premises, and Lawyer was not the officer who detained and handcuffed Johnson. SMF ¶ 36-37; SMF Resp. ¶¶ 36-37. Discovery revealed that, on the date Plaintiff was arrested, a total of fifteen appearance and arrest tickets for similar charges in the vicinity of 94 Partridge Street were issued, of which thirteen were given to Caucasian partygoers. SMF ¶ 44; SMF Resp. ¶ 44.

### C. Medical Attention

Plaintiff did not request medical attention at the scene of his arrest or while seated in the patrol vehicle. SMF ¶¶ 38-39; SMF Resp. ¶¶ 38-39. Plaintiff asserts, however, that "his injuries were obvious" and "the officers should . . . have insisted that he be seen by an EMT." SMF Resp. ¶ 38. Plaintiff received medical attention during the booking process for a bloody nose. SMF ¶ 40; SMF Resp. ¶ 40. Plaintiff declined an offer to be taken to the hospital at that time. SMF ¶ 41; SMF

Resp. ¶ 41.  While awaiting arraignment, Defendants assert that Plaintiff declined further treatment;

Plaintiff asserts that he merely did not affirmatively request treatment.  SMF ¶ 42; SMF Resp. ¶ 42.

Plaintiff alleges that he suffered severe injuries as a result of the assault and inadequate medical

treatment, including injuries to his face and eye, a broken orbital socket, blurred vision and scarring,

and neck and back injuries.  SMF Resp. ¶ 47.

### D.  Summary of the Complaint

Plaintiff alleges the following claims: (1) racial discrimination pursuant to 42 U.S.C.

§§ 1981 and 1983; (2) false arrest, excessive force, malicious prosecution, and denial of medical

treatment pursuant to § 1983; and (3) false arrest, malicious prosecution, and assault and battery

pursuant to New York law.  See Compl.; Dkt. No. 46 ("Plaintiff's Memorandum").[2]  Plaintiff seeks

substantial monetary damages.  Compl.  Defendants have moved for summary judgment on all

claims, and seek to strike Plaintiff's request for punitive damages.  Defs.' Mem. at 24.

## III.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs a court to grant summary judgment

if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  FED. R. CIV. P. 56(c).  Although "[f]actual disputes that are irrelevant or

unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d

Cir. 1991).

_____

[2] Plaintiff has withdrawn his claims for municipal liability, conspiracy, intentional infliction of emotional distress, libel, slander, and defamation.  Pl.'s Mem. at 6, 21.

The party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows that there is no genuine dispute as to any material fact, the burden shifts to the nonmoving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986). Mere conclusory allegations, speculation, or conjecture will not avail a party opposing summary judgment. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994). "The role of the court is not to weigh the evidence and determine the truth of the matter, but rather to perform the 'threshold inquiry of whether there is the need for a trial.'" Feder v. Target Stores, No. 11-CV-3675, 2014 WL 1651955, at *2 (E.D.N.Y. Apr. 24, 2014) (quoting Anderson, 477 U.S. at 249-50).

## IV.    DISCUSSION

### A.  Section 1981 Racial Discrimination Claim

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall

have the same right in every State and Territory to . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To establish a claim under § 1981, plaintiffs "must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." Brown v. City of Oneonta, N.Y., 221 F.3d 329, 339 (2d Cir. 1999).

Here, it is undisputed that Plaintiff is of Hispanic and African-American descent and thus a member of a racial minority. See Defs.' Mem. at 2. Although Defendants do not explicitly concede that Plaintiff's discrimination claim concerns one of § 1981's enumerated activities, it is well settled that an allegation of arrest based on racial discrimination satisfies the third prong. See, e.g., Wong v. Yoo, 649 F. Supp. 2d 34, 70 (E.D.N.Y. 2009) (noting that § 1981 provides for "the full and equal benefit of all laws and proceedings for the *security of persons*") (emphasis added). Thus, the Court need address only whether there is a genuine issue of material fact as to Plaintiff's allegation that Defendants intended to discriminate against Plaintiff based on his race.

Discriminatory intent on the basis of race must be a substantial or motivating factor behind the behavior complained of for a defendant to be held liable under § 1981. See Tolbert v. Queens Coll., 242 F.3d 58, 69 (2d Cir. 2001). In assessing evidence of discriminatory intent, courts should use an "expansive approach to the record" because plaintiffs in such suits must often "rely on the cumulative weight of circumstantial evidence, and a defendant is unlikely to leave a smoking gun." Wong, 649 F. Supp. 2d at 69 (citing Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998)) (internal quotation marks omitted). At the same time, the defendants' discrimination "must have been intentional and purposeful" and the plaintiff must make a "fact-specific allegation of a causal

link between defendant's conduct and the plaintiff's race." <u>Yusuf v. Vassar Coll.</u>, 827 F. Supp. 952, 955 (S.D.N.Y. 1993).

Defendants argue that there is no evidence on the record that Plaintiff was arrested because of his race. Defs.' Mem. at 3. Specifically, Lawyer did not use any racial epithets or slurs, and there were other racial minorities at the party, none of whom were taken into custody. <u>See id.</u> Plaintiff was the only partygoer who had any interaction with the police inside the premises, and there is no indication that Plaintiff was arrested for any reason other than his alleged conduct. <u>See id.</u> at 4. Moreover, Defendants note that the arrest minority ratio data—which revealed that thirteen out of fifteen desk appearance tickets issued for similar violations in the same neighborhood were to Caucasian individuals—further corroborates that Plaintiff was not discriminated against or stereotyped because of his race. <u>See id.</u>

Plaintiff does not challenge any of these assertions. Rather, Plaintiff argues that Defendants' intent to discriminate is evident in a single instance of "selective enforcement"—namely, that Defendants arrested Plaintiff, a racial minority, but declined to arrest fellow partygoer Johnson, who is Caucasian. Pl.'s Mem. at 4.

Selective enforcement claims require that the alleged comparators be "similarly situated in all material respects." <u>Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills</u>, 815 F. Supp. 2d, 679, 696 (S.D.N.Y. 2011). Plaintiff argues that Johnson is a "clear comparator" in that he was also detained and handcuffed at the party by the Albany Police Department; yet, he was not arrested and prosecuted. Pl.'s Mem. at 4. Defendants respond that Plaintiff and Johnson were not similarly situated in any material respects. Defs.' Mem. at 3-4. Specifically, Johnson had already left the party and then returned to observe the officers. <u>Id.</u> at 4. Johnson was outside the premises

throughout the officers' presence and never had a direct, face-to-face conversation with the police. Id. In contrast, Plaintiff's interaction with police occurred inside and involved a face-to-face exchange. See id. Moreover, Defendants point out that Lawyer neither arrested nor had any contact with Johnson. Id. at 4. Thus, other than the fact that both Plaintiff and Johnson were detained and handcuffed, Defendants argue they were not similarly situated in any material respect. Id.

The Court agrees with Defendants that Plaintiff's one-on-one, direct conversation with Lawyer, inside the premises, is materially different from Johnson's incident that occurred outside, after the party had concluded, and did not involve Lawyer. Moreover, Plaintiff has failed to provide any facts from which a reasonable trier of fact could conclude that Lawyer arrested Plaintiff *because* he was a racial minority. See, e.g., Anderson v. City of N.Y., 817 F. Supp. 2d 77, 95-96 (E.D.N.Y. 2011) (finding plaintiff failed to offer any facts showing that he was arrested because he was black). It is undisputed that Lawyer did not use racial epithets or otherwise display any race animus. Cf. Wong, 649 F. Supp. 2d at 69 (denying defendant summary judgment because of issue of fact as to whether he used racial epithets against plaintiff). Furthermore, although Lawyer used force against Plaintiff, even if unwarranted, "hostile acts of violence, without more, are insufficient to establish intentional discrimination." Anderson, 817 F. Supp. 2d at 95 (citing Lizardo v. Denny's, Inc., 270 F.3d 94, 102 (2d Cir. 2001) ("Although mistreatment by defendants is not irrelevant in assessing the strength of plaintiffs' circumstantial evidence of race-based animus, it is certainly not sufficient to establish it."). Accordingly, Plaintiff's racial discrimination claim under § 1981 is dismissed.

**B. Section 1983 Selective Enforcement Claim**

To establish a claim of selective enforcement under § 1983, a plaintiff must show "(1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential

treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

The parties' arguments related to Plaintiff's § 1983 selective enforcement claim are quite brief and essentially adopt their respective arguments regarding Plaintiff's § 1981 selective enforcement claim. See Defs.' Mem. at 5-6; Pl.'s Mem. at 5-6. Section 1981 merely "provides an alternative statutory remedy [to § 1983] for violations that concern an activity enumerated in the statute." Anderson, 817 F. Supp. 2d at 95 (citation omitted). Accordingly, for the reasons stated supra, the Court finds that Defendants are entitled to summary judgment on Plaintiff's § 1983 selective enforcement claim.

**C. Section 1983 and State Law False Arrest Claims**

A § 1983 claim for false arrest sounding in the Fourth Amendment is "substantially the same" as a claim for false arrest under New York law. Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). Under New York law, "a plaintiff claiming false arrest must show . . . that the defendant intentionally confined him without his consent and without justification." Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999) (quoting Weyant, 101 F.3d at 852). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (internal quotation marks and citation omitted). Here, Defendants argue that (1) Lawyer had probable cause to arrest Plaintiff, or (2) in the alternative, Lawyer is entitled to qualified immunity. See Defs.' Mem. at 7-11.

*1. Probable Cause*

Probable cause to arrest exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." Weyant, 101 F.3d at 852. The Court, in evaluating the existence of probable cause, must look to the "totality of the circumstances," Caldarola v. Calabrese, 298 F.3d, 156, 162 (2d Cir. 2002), and consider the "facts available to the officer at the time of arrest," Ricciuti v. N.Y. City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997). The "quantum of evidence required to establish probable cause . . . must constitute more than rumor, suspicion, or even a strong reason to suspect." United States v. Fisher, 702 F.2d 372, 376 (2d Cir. 1983) (internal citation and quotation marks omitted).

a. Obstruction

Defendants first argue that Lawyer had probable cause to arrest Plaintiff for obstruction of governmental administration. Defs.' Mem. at 8. New York Penal Law § 195.05 provides:

> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function by means of intimidation, physical force or interference, or by means of any independently unlawful act.

N.Y. PENAL LAW § 195.05. Defendants acknowledge that Judge Krestser dismissed the information against Plaintiff for obstruction as insufficient because Lawyer did not announce his official business and there was no allegation that Plaintiff knew that Lawyer was involved in an investigation. Defs.' Mem. at 8-9; see also Ex. T at 3 (noting that § 195.05 requires knowledge of the official government function to satisfy the intentional *mens rea* element). However, Defendants argue that Judge Krester's finding is refuted by the record. Defs.' Mem. at 9. Specifically,

11

Defendants assert that Plaintiff knew that Lawyer was conducting an investigation because: Plaintiff admits that Lawyer announced he would arrest everyone at the party for underage drinking; Plaintiff admits that Lawyer asked who owned the apartment; Lawyer did announce his official business; and these facts are all verified by non-party witnesses. Id. Defendants claim that it is "undisputed" that Plaintiff was aware of Lawyer's official purpose and that he was conducting an investigation. Id. Moreover, Defendants argue that Plaintiff committed the act of obstruction by providing the officers with false information concerning the owner of the premises, as well as attempting to leave without permission. Id. at 10.

Plaintiff does not address Defendants' argument regarding Plaintiff's knowledge of Lawyer's official conduct; rather, Plaintiff argues that there are issues of fact as to (1) whether he intended to prevent Lawyer from proceeding with his investigation, and (2) whether Plaintiff actually interfered with the investigation. Pl.'s Mem. at 8. As an initial matter, Plaintiff asserts that he did not interfere with Lawyer's investigation; if anything, he was trying to *help* Lawyer, not thwart him. Id. at 9. Plaintiff voluntarily responded to Lawyer's question about the owner of the premises and also complied with Lawyer's request to provide identification to establish that he was of legal drinking age. Id. Moreover, Plaintiff asserts that he and non-party witnesses testified that Plaintiff did not in any way attempt to interfere with police. Id. at 8. Finally, Plaintiff points out that Judge Kretser found that "there [wa]s no allegation that the officer asked [Plaintiff] to step aside or that [Plaintiff], in any way impeded or attempted to impede the investigation of the officer." Id. at 11.

"The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant, 101

F.3d at 852.  Here, the parties clearly dispute the pertinent events leading up to Plaintiff's arrest.  By Defendants' account, Plaintiff lied to police officers, refused to obey commands, and was hostile toward Lawyer.  However, Plaintiff asserts the opposite, that he was trying to help Lawyer—indeed, he was the only partygoer to offer any assistance to Lawyer—and he was truthful, calm, and compliant throughout the exchange.  "Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994).  Accordingly, the parties' conflicting accounts preclude the Court from determining as a matter of law that Lawyer had probable cause to arrest Plaintiff for obstruction of governmental administration.  See Searles v. Pompilio, 652 F. Supp. 2d 432, 439 (S.D.N.Y. 2009) (finding material issues of fact on issue of probable cause in false arrest claim where plaintiff and court officer provided differing accounts of incident leading up to plaintiff's arrest).

### b.  Resisting Arrest

Defendants next argue that Lawyer had probable cause to arrest Plaintiff for resisting arrest because Plaintiff brushed up against Lawyer and raised his arm in a defensive, aggressive manner when Plaintiff tried to leave the premises without permission.  See Defs.' Mem. at 8. Plaintiff disputes this account, asserting that he was calm and respectful at all times, provided his identification when requested, and never threatened or attempted to intimidate Lawyer; indeed, Plaintiff even volunteered to assist Lawyer with locating the owner of the home.  Pl.'s Mem. at 11-12.  As discussed supra, the Court finds that the parties' conflicting versions of the pertinent facts precludes summary judgment on the issue of probable cause to arrest Plaintiff for resisting arrest. See Rem, 38 F.3d at 644.

<u>c.</u>  <u>Trespassing</u>

Finally, Defendants argue that even if Lawyer lacked probable cause to arrest Plaintiff for obstruction or resisting arrest, in the alternative, he had probable cause to arrest Plaintiff for trespassing.  Defs.' Mem. at 10.  Defendants assert that Plaintiff informed Lawyer that he was unaware of the owner of the premises being present, and Lawyer therefore had probable cause to believe that Plaintiff was trespassing.  <u>Id.</u>  Plaintiff disputes this version of events, asserting that he informed Lawyer that he indeed knew the occupant of the premises, but simply believed that he was not present at the time because he had already left the party.  Pl.'s Mem. at 12.  Moreover, Plaintiff notes that there had been no report of trespassing or indication that the apartment had been abandoned or condemned; in other words, Lawyer had no reason to suspect that any of the partygoers, let alone Plaintiff, was trespassing.  <u>Id.</u>

Viewing the facts in the light most favorable to Plaintiff as the non-movant, Plaintiff—along with several other individuals—were merely attendees at a party hosted by a person with whom Plaintiff was familiar.  Indeed, Defendants do not dispute that the true owner/occupant of the premises was in fact upstairs at the party when the officers arrived.  Moreover, Defendants' sole argument rests on the alleged false information provided by Plaintiff regarding the owner's whereabouts.  However, Lawyer and the other officers made no attempt to further investigate possible trespassing by questioning other attendees.  Thus, Defendants have failed to provide sufficient facts to demonstrate that, as a matter of law, probable cause existed to arrest plaintiff for trespassing.

*2. Qualified Immunity*

Defendants next argue that Lawyer is entitled to qualified immunity.  Defs.' Mem. at 10-11.

Qualified immunity can be established through "arguable probable cause," which exists if (1) "it was objectively reasonable for the officer to believe that probable cause existed," or (2) "officers of reasonable competence could disagree on whether the probable cause test was met." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (citation omitted). Thus, "even if an officer is mistaken, and the arrestee did not commit the crime, the officer will not be held liable if he acted reasonably and in good faith." Washpon v. Parr, 561 F. Supp. 2d 394, 403 (S.D.N.Y. 2008) (citing Bernard v. U.S., 25 F.3d 98, 102 (2d Cir. 1994)).

The inquiry of whether the shield of qualified immunity applies to a defendant's conduct is a mixed question of law and fact. See Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004). Where there is no material factual dispute, it is appropriate for the Court to assess the reasonableness of the defendants' conduct under the circumstances presented and to rule on qualified immunity at the summary judgment stage. Lennon, 66 F.3d at 421. Where, as here, however, there is a dispute regarding the material facts, "the factual questions must be resolved by the factfinder." Kerman, 374 F.3d at 109; see also Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994) (holding that qualified immunity should be decided by a court "only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required"). For the reasons discussed supra finding disputed issues of fact for probable cause to arrest, Lawyer is precluded from asserting the defense of qualified immunity at the summary judgment stage.

### C. Section 1983 Excessive Force and State Law Assault and Battery Claims

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer" in the course of an arrest. Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010).

15

Because the Fourth Amendment's test of reasonableness is one of "objective reasonableness," the inquiry is fact specific and requires a balancing of various factors. Id. In assessing excessive force claims under the Fourth Amendment, a court must consider: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Id. No single factor is dispositive, as "the fact finder must consider the totality of the circumstances." Nimkoff v. Dollhausen, 751 F. Supp. 2d 455, 463 (E.D.N.Y. 2010).

Defendants argue that the amount of force employed by Lawyer was objectively reasonable based on the overall circumstances. Defs.' Mem. at 12-13. Plaintiff stood six feet two inches tall and weighed approximately two hundred pounds. Id. at 12. When Plaintiff attempted to leave the party, he was approximately one to two feet from Lawyer. Id. Lawyer grabbed Plaintiff's right arm, and Plaintiff raised his left arm in a defensive manner. Id. Lawyer was unable to use pepper spray because of the crowd of people, and thus his use of force was warranted considering Plaintiff's size and failure to obey commands. Id. at 13. Under these circumstances, Defendants argue that Lawyer acted reasonably in striking Plaintiff "in an attempt to create distance between himself and the [P]laintiff." Id. Moreover, Lawyer's safety concerns were evident in that he immediately called for backup after striking Plaintiff. Id. Finally, Defendants have provided a report from a police lieutenant and a tactical trainer indicating that Lawyer's response was in accordance with official police training. Id.; see also Dkt. No. 37-22, Ex. Q.

Plaintiff disputes Lawyer's version of the events. Pl.'s Mem. at 17-18. Plaintiff contends that he merely engaged Lawyer in conversation; he was never hostile or threatening; and he never assumed a fighting or aggressive stance, clenched a fist, or raised his hands. Id. Indeed, Plaintiff

was still holding his wallet in one hand when he was struck—had he any intention of using or threatening force, he would have wanted use of both hands.  Id. at 17.  Moreover, Plaintiff argues that Lawyer's safety concerns are unfounded.  See id.  In addition to Plaintiff's calm demeanor, there were only eight to ten partygoers present at the time, and none of the attendees displayed any threatening or unruly behavior.  Id.  Therefore, there was no need to use force against Plaintiff.  Finally, Plaintiff argues that Defendants' report fails to establish a lack of disputed issue because the report's conclusion is based on the assumption that Plaintiff was aggressive; however, as the non-movant, the Court must resolve factual ambiguities in favor of Plaintiff, and Plaintiff argues that he was not aggressive or threatening in any manner.  Id. at 18.

Viewing the facts in the light most favorable to Plaintiff, the Court cannot conclude as a matter of law that Lawyer's use of force was objectively reasonable.  According to Plaintiff's account, he never attempted to resist arrest or exhibited any hostile or threatening behavior that would warrant the need for Lawyer to punch him three times in the face.  Indeed, Defendants argue that Plaintiff raised his arm in a "defensive" position.  If anything, this indicates that Plaintiff was doing just that—defending himself—and in no way does it suggest that Plaintiff was displaying threatening or violent conduct.  Furthermore, Defendants argue that the punches were necessary "to create distance" between Lawyer and Plaintiff.  However, Defendants have provided no evidence that Lawyer was unable to simply step backward, that he asked Plaintiff to step backward and he refused, or that the other partygoers were otherwise preventing Lawyer from creating space if he felt threatened.  Thus, the Court cannot conclude as a matter of law that Plaintiff posed an immediate threat to Lawyer's safety, or that Plaintiff was resisting arrest or attempting to flee.  See Tracy, 623 F.3d at 96.  Therefore, Defendants are not entitled to summary judgment on Plaintiff's excessive

force and common law assault and battery claims.

### 1.  Qualified Immunity

"[A]n officer who has used excessive force is entitled to qualified immunity if his conduct falls in the sometimes hazy border between excessive and acceptable force."  Hartman v. Cnty. of Nassau, 350 Fed. App'x 477, 479 (2d Cir. 2009) (citing Brosseau v. Haugen, 543 U.S. 194, 198, (2004)).  The relevant question is whether "a reasonable officer" would have thought that the officer's use of force was lawful.  Brosseau, 543 U.S. at 198; Hartman, 350 Fed. App'x at 479.

"Although the qualified immunity issue should be resolved 'at the earliest possible stage in [the] litigation,' summary judgment is not appropriate when there are material factual disputes."  Stephenson, 332 F.3d at 77 (citation omitted).  As discussed supra, there are material factual disputes here as to whether Lawyer's use of force was excessive under the totality of the circumstances.  Accordingly, Lawyer is not entitled to qualified immunity on Plaintiff's excessive force and assault and battery claims at this time.

### D.  Section 1983 Denial of Medical Treatment

"The Due Process Clause . . . require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police."  Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983); see also Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989) (holding that the Fourth Amendment standard applies to a pre-trial detainee).  "[T]he official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need."  Id. (citation omitted).  Thus, the defendant officer must (1) "know[] of and disregard[ ] an excessive risk to [the arrestee's]

18

health or safety," and (2) "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

Defendants argue that Plaintiff's testimony and response to interrogatories conclusively establish that they were not deliberately indifferent to Plaintiff's medical needs. Defs.' Mem. at 14-15. Specifically, Plaintiff refused medical treatment at the scene of his arrest, and did not ask for medical treatment while in transit to the police station. <u>Id.</u> at 15. Moreover, when Plaintiff's nose began to bleed during the booking process, Plaintiff received medical care, but refused to accept any additional treatment. <u>Id.</u>

Plaintiff responds that he was merely a "scared twenty year old" who was just trying to "assuage the situation on his part" by declining treatment and "wanted to do whatever he could to get out of a terrible situation." Pl.'s Mem. at 20-21. Plaintiff contends that the police officers should have known that three viscous punches that knock someone to the ground would cause injury, and Defendants recklessly ignored Plaintiff's medical needs. <u>Id.</u>

Plaintiff's response is unavailing. Plaintiff's deposition testimony is clear that he refused medical treatment on several occasions. <u>See, e.g.</u>, Dkt. No. 37-13, Ex. H at 64 ("Q: Were you offered any medical treatment while you were sitting in the back of the car in front of 94 Partridge Street? A: Yes. Q: Did you refuse medical treatment? A: Yes."). Moreover, Plaintiff concedes that he received medical attention during the booking process for his bleeding nose, <u>id.</u> at 65-66; yet, he declined to receive any additional treatment, <u>id.</u> at 66. Furthermore, Plaintiff's argument that he "wanted to do whatever he could to get *out* of a terrible situation," is belied by the fact that he declined the offer to leave the police station and go to the hospital. Accordingly, no rational

factfinder could conclude that Defendants were deliberately indifferent to Plaintiff's medical needs, and Defendants are entitled to summary judgment on that claim.

**E. Section 1983 Malicious Prosecution**

Section 1983 provides a federal cause of action for malicious prosecution against state officials, but courts look to state law for the elements of the claim. Cook v. Sheldon, 41 F.3d 73, 79-80 (2d Cir. 1994). "To state a claim under New York law for . . . malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). A showing of probable cause provides a complete defense to a claim of malicious prosecution. See Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002). Defendants argue that (1) there was probable cause to prosecute Plaintiff, and (2) the proceedings were not instituted with malice. Defs.' Mem. at 15-16.

*1. Probable Cause*

Defendants argue that, for the same reasons Lawyer had probable cause to arrest Plaintiff for obstruction and resisting arrest, they likewise had probable cause to prosecute Plaintiff for those crimes. Defs.' Mem. at 16 (citing Espada v. Schneider, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007) (noting that probable cause to prosecute "entails essentially the same inquiry as probable cause to arrest"). The Court agrees that this is the appropriate standard in this instance for determining the existence of probable cause to prosecute. See Posr v. Dolan, No. 02-CV-0659, 2003 WL 22203738, at *3, (S.D.N.Y. Sept. 23, 2003) (finding probable cause analysis identical where accusatory instrument filed concurrently with arrest). However, as stated supra, there exists a genuine dispute

of material fact as to whether Lawyer had probable cause to arrest Plaintiff. Accordingly, the same dispute of material fact precludes a finding that, as a matter of law, Defendants had probable cause to commence prosecution against Plaintiff.

### 2. Malice

Under New York law, "malice" does not necessarily require a showing of spite, hatred, malevolence, or corrupt design. See Rounseville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994). "Rather, it means that the 'defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" Id. (quoting Nardelli v. Stamberg, 377 N.E.2d 975, 976 (N.Y. 1978)).

Defendants argue that Plaintiff has not alleged any facts suggesting a wrong or improper motive. Defs.' Mem. at 16. However, as Plaintiff correctly points out, he does not have to identify a separate, improper motive because a jury can infer malice where probable cause is absent or in dispute. Pl.'s Mem. at 20; see also Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) ("[A] jury could infer malice from a lack of probable cause, which is sufficiently in dispute to survive summary judgment."); Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) ("In most cases, the lack of probable cause—while not dispositive—tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.") (citation and internal quotation marks omitted).

Because a rational jury could find that Defendants lacked probable cause to arrest and prosecute Plaintiff, malice may therefore be inferred. See Sassower v. City of White Plains, Cnty. of Westchester, No. 89 CIV. 1267, 1995 WL 222206, at *5 (S.D.N.Y. Apr. 13, 1995) (denying defendant's motion for summary judgment on malicious prosecution claim where "a jury could find

an absence of probable cause"). Therefore, a triable issue of fact exists as to whether Defendants commenced the proceeding with malice. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's malicious prosecution claim.

### E. Punitive Damages

"A jury may 'assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" DiSorbo v. Hoy, 343 F.3d 172, 186 (2d Cir. 2003) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). Defendants argue that any alleged conduct does not approach the threshold required for permitting punitive damages. Defs.' Mem. at 24. However, as with Plaintiff's false arrest, excessive force, and malicious prosecution claims, there are disputed issues of fact central to whether Defendants' conduct "involves reckless or callous indifference to the federally protected rights" of Plaintiff. See DiSorbo, 343 F.3d at 186. Accordingly, summary judgment dismissing Plaintiff's request for punitive damages is denied. See Gabriel v. Cnty. of Herkimer, 889 F. Supp. 2d 374, 395 (N.D.N.Y. 2012).

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 37) for summary judgment is **GRANTED** with respect to the following claims: racial discrimination pursuant to 42 U.S.C. §§ 1981 and 1983; municipal liability; deliberate indifference to Plaintiff's medical needs pursuant to 42 U.S.C. § 1983; conspiracy pursuant to 42 U.S.C. § 1986; intentional infliction of emotional distress; libel; slander; and defamation. Defendants' Motion (Dkt. No. 37) is **DENIED** in all other respects, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:      January 27, 2015
            Albany, NY



_____
            Lawrence E. Kahn
            U.S. District Judge